UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

BENJAMIN WHITE and DAWN WHITE,          :
*Husband and Wife*,                     :
                                        :
                    Plaintiffs,         :
                                        :
        v.                              :   No. 5:17-cv-4174
                                        :
THE HOME DEPOT, INC. and                :
LOUISVILLE LADDER, INC.,                :
                                        :
                    Defendants.         :
_____

# **O P I N I O N**

### Defendants' Motion for Summary Judgment, ECF No. 35—Granted

**Joseph F. Leeson, Jr.**                              May 9, 2018
**United States District Judge**

      In this personal injury case involving a fall from a ladder, Plaintiffs bring claims of strict liability, negligence, breach of warranty, and loss of consortium against the manufacturer and seller of the ladder. Defendants have moved for summary judgment on all of Plaintiffs' claims, which this Court grants for the reasons below.

## I.    BACKGROUND[1]

      Plaintiff Benjamin White bought a six-foot fiberglass ladder, manufactured by Defendant Louisville Ladder, Inc., from Defendant The Home Depot, Inc. Stat. Facts ¶¶ 2-3. On July 19, 2015, Mr. White used the ladder while renovating the master bathroom in his home. Stat. Facts

---

[1] The following facts are undisputed or taken in the light most favorable to Plaintiffs, the nonmovants. Unless otherwise noted, "Stat. Facts" refers to Defendants' Statement of Undisputed Material Facts, ECF No. 35-1, and the corresponding paragraphs in Plaintiffs' Response to Defendants' Statement of Facts, ECF No. 39, which are identically numbered.

¶ 17. Mr. White placed the ladder on a tarp[2] he had spread on the ceramic tile floor and climbed up to paint the skylight in the bathroom. Stat. Facts ¶¶ 4, 20, 24; Benjamin White Deposition 96:16-20, Ex. D to Defs.' Mot., ECF No. 35-8. While he was painting, Mr. White fell from the ladder and sustained various injuries. Stat. Facts ¶¶ 27-28. Mr. White did not feel the ladder slide or move before he fell and cannot state what happened from the time he was painting until the time he ended up on the floor. Stat. Facts ¶¶ 30-31, 34. The parties dispute whether Mr. White tried to move the ladder as he was standing on it. Defendants argue that he did, and cite the report of the ambulance crew that arrived at the scene of the accident, which states that Mr. White told the first responders that he tried to move the ladder. EMS Report, Ex. J to Defs.' Mot., ECF No. 35-14. Mr. White denies telling the first responders that he tried to move the ladder. Pls.' Stat. Additional Facts ¶ 10, ECF No. 39.

The ladder included a yellow warning label that advised the user that "FAILURE TO READ AND FOLLOW INSTRUCTIONS ON THIS LADDER MAY RESULT IN INJURIES OR DEATH." *See* Warning Label marked as White 8, Ex. E to Defs.' Mot., ECF No. 35-9. Another label instructed the user to "Set all four feet on firm level surface. Do not place on unstable, loose or slippery surfaces" and "Secure ladder from movement where possible." *See* Warning Label marked as White 12, Ex. E to Defs.' Mot. Mr. White read and understood all of the warnings and instructions on the ladder and knew that if he did not use the ladder correctly, he could possibly fall and be injured. Stat. Facts ¶¶ 14-15. He had used the ladder without incident prior to the accident on July 19, 2015. Stat. Facts ¶ 16. According to Mr. White, there was nothing mechanically wrong with the ladder, its structure, or its design, and it worked as he

---

[2]  Mr. White testified that the tarp was made of a material similar to canvas and that he used it as a drop cloth. Benjamin White Deposition 54:11-22, Ex. D to Defs.' Mot., ECF No. 35-8.

expected. Stat. Facts ¶¶ 36-38. During his deposition, he did not testify that he required any additional warnings about the ladder. Stat. Facts ¶ 39.

In the Complaint, Plaintiffs allege claims for negligence, strict liability, and breach of warranties against Defendants, and Plaintiff Dawn White alleges a separate loss of consortium claim. ECF No. 1. Defendants have moved for summary judgment on all counts.

## II. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

## III. ANALYSIS

**A. Plaintiffs' expert testimony is inadmissible under the *Daubert* standard.**

As part of their motion for summary judgment, Defendants move to exclude the testimony of Paul Dreyer, P.E., whom Plaintiffs offer as an expert in support of their position that Defendants produced and sold the ladder with inadequate warnings. Defendants contend that Dreyer's opinions are "unscientific" and do not fit the facts of this case. The admissibility of expert testimony is governed by Federal Rules of Evidence 702 and 703 as well as by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and its progeny. *See In re Paoli RR Yard PCB Litigation*, 35 F.3d 717, 735 (3d Cir. 1994). The Third Circuit Court of Appeals has clarified that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Under the qualification element, "the witness must possess specialized knowledge," which can include "a broad range of knowledge, skills, and training." *Id.* Second, to meet the reliability requirement, the testimony "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Id.* "Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Id.*

Dreyer's testimony is inadmissible because it does not satisfy the reliability and fit requirements. "Reliability is the polestar of the *Daubert* inquiry." *DiPaolo v. Black & Decker (US) Inc.*, No. CIV.A. 07-4314, 2009 WL 5064548, at *2 (E.D. Pa. Dec. 15, 2009) (citing *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004)) (internal quotations and alterations omitted). Courts engage in a flexible inquiry to determine the reliability of expert testimony and, in the products liability context, have considered such factors as "federal design or performance standards"; "standards published by independent standards organizations"; "discussion of the relevant literature" by the expert, including "general design manuals or industry-specific journals"; "industry practice"; "product or design history"; the presence of "charts, diagrams, and other visual aids"; "scientific testing"; "whether [a] proposed alternative design . . . is feasible"; and "the risk-utility of [any] suggested modification." *Id.* (quoting *Milanowicz v. The Raymond Corp.*, 148 F. Supp. 2d 525, 533–36 (D.N.J. 2001)).

Dreyer's report presents no signs of reliability. He made no inspection of the ladder or the Whites' bathroom floor. *See* Stat. Facts ¶¶ 48-49. Nor did he conduct any witness interviews, reconstruct the accident, or perform any tests on the ladder. *See* Stat Facts ¶¶ 50, 52-53. Dreyer's only citations of industry standards and principles involve the prevalence of falls generally and general engineering principles for reducing hazards. *See* Dreyer Report at 5-6, Ex. M to Defs.' Mot., ECF No. 35-17. Moreover, Dreyer presents an unclear and seemingly self-contradictory analysis. He notes that the ladder's warning label warned the user to place the feet on a level surface and not to set it up on unstable, loose, or slippery surfaces, and opines that Mr. White complied with these instructions. Dreyer Report at 6. But Dreyer opines that Mr. White was injured by "unexpected slippage and toppling of the ladder." Dreyer Report at 7. Thus, Dreyer asserts that the tarp on the tile floor was not slippery to the extent that Mr. White complied with

5
050918

the warnings, but slippery enough to cause the ladder to topple and fall, so that the ladder required an additional warning.

From his unclear analysis, Dreyer concludes that the ladder was unreasonably dangerous and defective because "it did not adequately warn of the danger of stepladder slipping when placing the stepladder on a paint tarp on top of a smooth tile surface." *Id.* Dreyer states that a ladder manufacturer reasonably could expect a consumer to use a ladder on top of a paint tarp, and that a paint tarp can slip. *Id.* Therefore, according to Dreyer, Defendants should have included a warning about the danger of the stepladder slipping on a tarp placed on a smooth surface, and that the absence of this warning caused Mr. White's injuries. *Id.* Notably, Dreyer does not explain why the existing warnings not to place the ladder on an unstable or slippery surface, which Mr. White allegedly understood and followed, did not adequately warn a user of the possibility that the ladder could slip and cause injury to a user, such that a greater level of specificity was required. Instead, Dreyer presents only his own conclusory assertions, which do not rise to the level of reliability required to present his opinions to a jury. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *see also Oddi v. Ford Motor Co.*, 234 F.3d 136, 156, 158 (3d Cir. 2000) (excluding expert testimony in products liability case where expert engaged in a "haphazard, intuitive inquiry" using "little, if any, methodology beyond his own intuition" because his "*ipse dixit* [did] not withstand *Daubert*'s scrutiny"). This Court finds Dreyer's opinions unreliable.

To the extent that Dreyer presents any reliable conclusion, it is that he believes a warning was necessary because it was not obvious to a user that the tarp was slippery and would slide on

a smooth tile floor if not secured.[3] This opinion is not helpful to a trier of fact, though, because it speaks to a potentially inadequate warning about the tarp, not the ladder, and Plaintiffs' claims are limited to the ladder only. Thus Dreyer's opinions fail the fit requirement as well.

Dreyer's report does not meet the requirements of Rule 702 and *Daubert*, and Plaintiffs may not rely on his report and testimony.

**B. Plaintiffs' products liability claims fail because they have not established that the ladder was defective.**

Plaintiffs bring claims of strict liability, negligence, and breach of warranty, all of which are premised on Defendants' alleged failure to provide adequate warnings that the ladder presented a slipping hazard.[4] The "threshold inquiry" for all of these theories is whether the

---

[3] Dreyer seems to suggest that Mr. White complied with the warnings on the ladder as best as he could, but that a typical painting tarp "is not considered a slippery surface," Dreyer Report at 6, implying that the accident happened because Mr. White did not realize that the tarp was slippery. Apart from being unhelpful to the jury, this conclusion itself is suspect, given that, although Mr. White supposedly did not realize that the tarp could slip on the tile floor, and thus its slippery nature was nonobvious, Dreyer was able to opine, without any inspection or testing of the tarp, that "a typical paint tarp placed on a typical tile surface may slip under certain circumstances." *Id.*

[4] Plaintiffs premise their strict liability claim on a failure to warn theory. Brief in Opp. at 12, ECF No. 38. To prevail under strict liability based on a failure to warn, a plaintiff must prove (1) that the product was defective for lack of sufficient warnings, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm. *Hatcher v. SCM Grp. N. Am., Inc.*, 167 F. Supp. 3d 719, 725 (E.D. Pa. 2016), *appeal dismissed* (July 5, 2016). Plaintiffs also base their negligence claim on a failure to warn theory, arguing that Defendants breached a duty "to provide a product containing adequate warnings for the use of their ladder." *See* Brief in Opp. at 12. "[A] claim for negligence under a failure-to-warn theory in products liability requires showing, unlike in a strict products liability claim, that the manufacturer was at fault" and that "the absence or inadequacy of the warnings was the factual or proximate cause of the injury." *Wright v. Ryobi Techs., Inc*, 175 F. Supp. 3d 439, 454–55 (E.D. Pa. 2016) (citing *Dauphin Deposit Bank & Tr. Co. v. Toyota Motor Corp.*, 596 A.2d 845, 849–50 (Pa. Super. Ct. 1991)). As for Plaintiffs' warranty claims, they have produced no evidence of an express warranty, or that they communicated a particular purpose for the ladder to Defendants at the time of purchase, as required for an implied warranty of fitness for a particular purpose. *See Meyers v. LVD Acquisitions, LLC*, No. 1740 MDA 2016, 2017 WL 1163056, at *5 (Pa. Super. Ct. Mar. 28, 2017). Thus they are limited to an implied warranty of merchantability, which the Third Circuit Court of Appeals considers "essentially the same" as the rule of strict products liability in

product was defective. *McCauley v. Green Bull, Inc.*, No. 2:08-CV-00789-LDD, 2009 WL 10684972, at *2 (E.D. Pa. Oct. 15, 2009) (granting summary judgment to defendants on strict liability, negligence, and warranty claims where plaintiff had not established a defect). *See also Pullins v. Stihl Inc.*, No. CIV.A. 03-5343, 2006 WL 1390586, at *5 (E.D. Pa. May 19, 2006) ("Before reaching causation, however, a Plaintiff must first satisfy the threshold inquiry as to whether there is a defect . . . whether the Plaintiff is suing in negligence, strict liability or breach of warranty."); *McKenna v. E.I. Du Pont DeNemours & Co.*, No. CIV.A. 87-2233, 1988 WL 71271, at *2 (E.D. Pa. June 30, 1988) (holding that plaintiff's strict liability, negligence, and breach of warranty claims against manufacturer all required a showing that product was defective), *aff'd sub nom. McKenna v. E.I. DuPont DeNemours & Co.*, 866 F.2d 1411 (3d Cir. 1988). Under Pennsylvania law, "[a] product is defective due to a failure-to-warn where the product was distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." *High v. Pennsy Supply, Inc.*, 154 A.3d 341, 351 (Pa. Super. Ct. 2017) (quoting *Phillips v. A–Best Prod. Co.*, 665 A.2d 1167, 1171 (Pa. 1995)), *reargument denied* (Pa. Super. Ct. Mar. 16, 2017), *appeal denied*, 171 A.3d 1287 (Pa. 2017). A plaintiff can show a product was defective under this theory by showing that "a warning of a particular danger was either inadequate or altogether lacking, and that this deficiency in warning made the product 'unreasonably dangerous.'" *Id.* (quoting *Phillips*). Plaintiffs allege that the ladder was defective because it did not contain a warning that the ladder posed a risk of slipping when placed on an unsecured tarp on a smooth tile floor.

---

Restatement (Second) of Torts § 402A. *See Smith v. Howmedica Osteonics Corp.*, 251 F. Supp. 3d 844, 854–55 (E.D. Pa. 2017) (citing *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 94 (3d Cir. 1983), and dismissing warranty claim where strict liability claim failed).

Plaintiffs' claims fail, because no reasonable jury could conclude that the ladder was defective.[5] Plaintiffs claim that Defendants should have warned them of the danger of using the ladder on a tarp on a slippery surface, but Defendants did warn users of the danger of the ladder slipping: the parties do not dispute that the ladder displayed a warning to the user not to set it up on a loose or slippery surface. Nor do they dispute that Mr. White knew of this warning. In fact, Mr. White did not testify to any additional warning he felt he needed with respect to the ladder. By setting up the ladder on a loose and slippery surface, Mr. White failed to heed the warnings that Defendants provided, and a plaintiff cannot succeed on a failure to warn claim if the evidence establishes that the product contained a sufficiently clear warning and the plaintiff was injured because he disregarded it. *See Roudabush v. Rondo, Inc.*, No. 3:15-CV-059, 2017 WL 3912370, at *7–8 (W.D. Pa. Sept. 5, 2017) (citing *Davis v. Berwind Corp.*, 690 A.2d 186 (Pa. 1997)). To the extent that Plaintiffs claim that Mr. White could not have known that the loose painting tarp could slide on the tile floor, they allege a latent danger in the tarp, not in the ladder. Plaintiffs fail to explain why the general warning not to set up the ladder on a loose or slippery surface is inadequate, such that Defendants were required to anticipate specific surfaces, or combinations of surfaces, on which customers might place ladders and to craft specific warnings accordingly. *See Salvio v. Amgen Inc.*, No. 2:11-CV-00553, 2012 WL 517446, at *6 (W.D. Pa. Feb. 15, 2012) (rejecting negligent failure to warn claim against manufacturer of prescription drug because the warning was adequate as a matter of law, since it advised of the exact injury

---

[5] Ordinarily, whether a product is unreasonably dangerous by virtue of an inadequate warning to the degree that it is "defective" for purposes of strict liability is a question for the jury. *Amato v. Bell & Gossett*, 116 A.3d 607, 620 (Pa. Super. Ct. 2015). Regardless, summary judgment is still proper when there is no genuine dispute of material fact such that reasonable minds cannot differ. *See Hatcher v. SCM Grp. N. Am., Inc.*, 167 F. Supp. 3d 719, 730 (E.D. Pa. 2016) (refusing to grant reconsideration of grant of summary judgment or stay case until outcome of *Amato* because summary judgment was appropriate regardless of whether issue of defect was ordinarily a jury question).

that occurred, even though it warned of risk of infection generally, and decedent contracted a fungal infection).

At most, Plaintiffs have shown that an unfortunate accident occurred. But showing a fall alone, without more, does not entitle Plaintiffs to relief. *See Chapman v. Chaon*, 619 F. App'x 185, 188-89 (3d Cir. 2015) (holding that reasonable jury could not find negligence and could not apply res ipsa loquitur where person fell off ladder and landed on plaintiff); *McCauley*, 2009 WL 10684972 at *3 (holding that plaintiff could not establish defect based only on the fact that one of the rungs of her ladder gave out). Plaintiffs have failed to produce sufficient evidence to allow a jury to conclude that the ladder was defective, and Defendants are entitled to summary judgment on Plaintiffs' strict liability, negligence, and warranty claims.

**C. Plaintiff Dawn White's loss of consortium claim fails because Plaintiffs' products liability claims fail**.

Loss of consortium is a derivative claim that depends upon a viable tort claim of the spouse. *Kline v. Zimmer Holdings, Inc.*, 662 F. App'x 121, 123 n.1 (3d Cir. 2016) (holding that because the court affirmed the district court's grant of summary judgment to the defendant on tort claims, separate analysis of loss of consortium claim was not required) (citing *Darr Const. Co. v. Workers' Compensation Appeal Bd.*, 715 A.2d 1075, 1080 (1998) ("It is well-settled that the [loss of consortium] claim is derivative . . . .")). Because this Court grants summary judgment on Plaintiffs' products liability claims, it grants summary judgment on Plaintiff Dawn White's loss of consortium claim as well.

IV.     CONCLUSION

For the reasons discussed above, this Court finds that Plaintiffs have failed to carry their burden to survive summary judgment, and grants summary judgment in favor of Defendants on all of Plaintiffs' claims. A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge